IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02021-CMA-KLM

MICHAEL SEAN EDMOND,

      Plaintiff,

v.

PIKES PEAK DIRECT MARKETING, INC.,d/b/a Chef's Catalog,

      Defendant.

_____

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Summary Judgment** [Docket No. 21; Filed August 17, 2012] (the "Motion"). Plaintiff, who proceeds in this matter *pro se*, filed a Response and Cross-Motion for Summary Judgment [#34] on October 24, 2012 (the "Cross-Motion"). Defendant filed a Reply in Support of Summary Judgment [#37] on November 5, 2012 (the "Reply"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion and Cross-Motion were referred to this Court for recommendation [## 25, 36]. The Court has reviewed the Motion, the Cross-Motion, the Reply, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#21] be **GRANTED** and that the Cross-Motion [#34] be **DENIED**.

### I. Summary of the Case

Plaintiff, who is African-American, initiated this Title VII action on August 4, 2011.

-1-

*See Compl.* [#1].  He asserts two claims for relief.  [#1] at 4, 9.  First, Plaintiff alleges that Defendant's blanket "no-felons" hiring policy violates Title VII of the Civil Rights Act of 1964 in that it has a disparate impact on African-Americans such as Plaintiff because African-Americans "are convicted at a rate disproportionately greater than their representation in the population." [#1] at 4.  For factual support, Plaintiff references the Equal Employment Opportunity Commission ("EEOC") intake questionnaire he completed on October 21, 2010 regarding the charge of discrimination he later submitted.  *Id.*  Plaintiff stated in the questionnaire that he was told by the receptionist at Defendant's place of business that he would not be hired if he had a felony conviction, even though the job application provided that a conviction would not bar him from being hired.  [#1] at 6.  He further claims that the receptionist did not explain the reason why his felony conviction would prevent him from being hired.  *Id.*

In his second claim for relief, Plaintiff alleges that Defendant committed libel and slander against him when it stated in its response to Plaintiff's charge of discrimination that Plaintiff had assaulted one of Defendant's employees.  [#1] at 9.  Defendant explained in its EEOC response that Plaintiff had attended a job fair in which Defendant was participating on September 14, 2010.  *Id.*  Defendant claimed that Plaintiff frightened one of its employees when he screamed at her and subsequently threw a drink on her after she discussed with Plaintiff the company's criminal history hiring policies and Plaintiff's circumstances.  *Id.*  Plaintiff contends that he was incarcerated on the date of this alleged incident and that he was not released until a week later on September 21, 2010.  *Id.*  Thus, Plaintiff states that there is no possible way he assaulted Defendant's employee on the date alleged.  *Id.*  For relief on his two claims, Plaintiff seeks compensatory and punitive

damages along with injunctive relief.  [#1] at 10.

As Plaintiff references in his Complaint, he filed a charge of discrimination with the Colorado Civil Rights Division and the EEOC on November 6, 2010.  *Motion* [#21] at Exh. C.  Plaintiff alleged in the charge that on October 4, 2010, upon seeking employment with Defendant, he was told that he could not be hired because he has a criminal record. *Id.* He further alleged that he was discriminated against based on race in violation of Title VII of the Civil Rights Act of 1964 in that 1) he was qualified for the position; 2) he applied for the position; 3) he was denied the position; and 4) a company representative told him the company would not hire anyone with a criminal record.  *Id.* After Defendant filed a response and Plaintiff submitted a rebuttal, the EEOC dismissed Plaintiff's charge of employment discrimination on May 10, 2011.  [#21] at Exh. E, F and G.  Plaintiff then timely filed the instant action. *See* [#21] at Exh. G (requiring lawsuit to be filed within ninety days of receipt of notice of dismissal).

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Cross-Motion [#34] and other filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the

-4-

Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

Defendant seeks summary judgment on Plaintiff's two claims for relief. In the Cross-Motion, Plaintiff responds to Defendant's arguments, and although he also requests that his Cross-Motion be granted, his arguments are directed at showing disputed issues of material fact such that summary judgment should not be granted for Defendant. He fails to argue that the evidence supports entry of summary judgment in his favor. Consequently, Defendant's Reply reiterates its arguments in support of its request for summary judgment.

### A.    Disparate Impact Claim

As outlined above, Plaintiff first alleges that Defendant's policy of not hiring convicted felons has a disparate impact on African-Americans in violation of Title VII. Defendant argues that it is entitled to summary judgment on this claim because Plaintiff can present no evidence of a "blanket no felons hiring policy." [#21] at 4-5. Defendant contends that because Plaintiff cannot show the existence of a specific, identifiable employment practice or policy, as he must, his disparate impact claim must fail. *Id.* Plaintiff argues in response that a ruling at this stage of the proceedings is premature and, alternatively, that sufficient evidence in support of the claim exists such that summary judgment should not be granted for Defendant. [#34] at 6-13.

## 1.    Legal Standards

Title VII of the Civil Rights Act of 1964 prohibits, among other things, discrimination on the basis of race. *See* 42 U.S.C. § 2000e-2(a). Title VII recognizes two types of claims: disparate treatment and disparate impact. *Carpenter v. The Boeing Company*, 456 F.3d 1183, 1186 (10th Cir. 2006). Claims of disparate impact "involve employment practices that are facially neutral in their treatment of different groups but in fact fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Board of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). "Proof of a discriminatory motive ... is not required under a disparate impact theory." *Id.* The premise behind this approach "is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988).

To establish a *prima facie* case of disparate impact discrimination, a plaintiff must show "that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991); 42 U.S.C. § 2000e-2(k)(1)(A)(I). A plaintiff "must point to both a significant disparate impact and to a *particular* policy or practice that caused the disparity." *Pippin v. Burlington Resources Oil and Gas*, 440 F.3d 1186, 1200 (10th Cir. 2006) (emphasis in original).

## 2.    Application

Here, Defendant argues that Plaintiff cannot present evidence of a blanket "no felons" hiring policy because Defendant has no such policy. In support of the Motion, Defendant presents a Declaration of James F. Gaston, Defendant's Chief Operating Officer

and Chief Financial Officer.  [#22].  Mr. Gaston states that contrary to Plaintiff's allegation, Defendant "has never had a 'blanket no felons hiring policy.'"  [#22] at 1.  Mr. Gaston references Defendant's employment application which states that "[a] conviction will not necessarily disqualify an applicant for employment."  *Id.*  He states that Plaintiff has been unable to identify the unnamed receptionist with whom Plaintiff claims he interacted on October 4, 2010.  *Id.*  Regardless, Mr. Gaston states that no receptionist would have been authorized to state that a felony conviction would automatically preclude an applicant from being hired because that has never been Defendant's policy or practice.  *Id.*

Mr. Gaston further explains that with respect to positions that involve computer-related work with access to sensitive customer data, including credit card information, Defendant is required to comply with the Payment Card Industry ("PCI") security standards. [#22] at 2.  Mr. Gaston states that approximately half of the company's jobs fall into that category.  *Id.*  The security standards call for background checks, including criminal record reviews.  *Id.*  To maintain compliance with the security standards, Defendant's Information Systems Security Policy provides in pertinent part that "[p]ersons who have been convicted of a felony must not be hired into, retained for, promoted into, or maintained in computer-related positions of trust."  [#22] at 2 (citing Exhibit B at 3).  Mr. Gaston states that this policy "does not reflect the type of 'blanket' policy alleged by [Plaintiff], but rather a narrowly tailored screening process for 'computer-related positions of trust,' which is in keeping with the PCI security standards."  [#22] at 2.

Plaintiff first argues in response that he was never provided an opportunity to reply to Defendant's Answer [#8] as required by Fed. R. Civ. P. 12(a)(1)c and thus he unknowingly forfeited his right to do so.  [#34] at 6.  Plaintiff, however, misinterprets the

-7-

rule.  Fed. R. Civ. P. 12(a)(1)(c) only authorizes a reply to an answer when the court orders a reply.  Here, Plaintiff did not "unknowingly forfeit" a right to reply to the Answer because the Court did not order one.

Plaintiff next asserts that he was arrested for an alleged parole violation on May 8, 2012 and that his parole was subsequently revoked on August 20, 2012.  [#34] at 7.  He claims therefore that he was unable to properly conduct discovery in this matter.  *Id.*  He further contends that Defendant has failed to provide required disclosures to him.  *Id.*  As Defendant points out in the Reply, however, the Scheduling Order [#14] was issued on January 3, 2012.  Plaintiff offers no explanation as to why he failed to conduct discovery during the four months before he was arrested.  Moreover, Defendant contends that Plaintiff failed to serve any initial disclosures, which were due on January 18, 2012, and that documents on which Plaintiff relied in his Cross-Motion show that he received Defendant's initial disclosures.  [#37] at 5.  In addition, the record is devoid of any filing by Plaintiff seeking to extend the discovery period or explaining his difficulties in completing discovery before the deadline expired.  The Court therefore finds that Plaintiff's alleged discovery difficulties do not warrant postponing a ruling on the merits of Defendant's Motion.

Regarding the merits, Plaintiff submits an affidavit stating that on October 4, 2010 when he filled out an application for the position of customer contact representative at Defendant's place of business, the receptionist told him and other potential job applicants that if they had a felony conviction they would not be hired.  [#34] at 25.  Plaintiff then argues that pursuant to Mr. Gaston's own declaration, Defendant has a policy of not hiring felons for the position of customer contact representative because it is considered  a

computer-related position of trust.  [#34] at 10.  Thus, Plaintiff claims he has presented sufficient evidence of a specific employment practice or policy.  [#34] at 11.

Plaintiff further claims that he can "easily show" that Defendant's no-felons hiring policy for computer-related positions of trust has caused a significant disparate impact on African-Americans.  *Id.*  He contends that some of the discovery documents sent to him by Defendant show that no African-American has been hired as a customer contact representative, the position for which he applied.  *Id.*  Plaintiff, however, fails to attach such documents to his Cross-Motion.  Moreover, because Plaintiff's contention is not included in his affidavit, it is not proper summary judgment evidence.  Plaintiff also claims that there have been several well-known and published statistical studies showing that the number of African-Americans in the United States who have felony criminal convictions is disproportionate to their total composition of the population.  *Id.*  He cites to one publication from 2002 titled, "The Statistics of Discrimination."  [#34] at 11-12.

Based on the evidence presented, the Court finds that Plaintiff has failed to present a *prima facie* case of disparate impact discrimination.  Plaintiff has not shown that Defendant has a blanket "no-felons" hiring policy as alleged in his Complaint.  Defendant's Chief Operating Officer states that no such policy exists and the employment application itself states that a criminal conviction will not necessarily disqualify an applicant.  Plaintiff's only evidence of such a policy, an alleged single statement by an unidentified receptionist for Defendant, is insufficient to create a genuine issue of material fact on the issue of whether such a policy exists.  First, Plaintiff makes no showing that the receptionist was authorized to make the alleged statement on Defendant's behalf.  Second, even assuming, *arguendo*, that the receptionist's statement was endorsed by Defendant, Plaintiff has failed

to show that he actually submitted an employment application after speaking with her. Third, and most crucially, Plaintiff has failed to show that he was not hired because of the "no-felons" policy.  The record is devoid of any evidence whatsoever to demonstrate that Plaintiff completed the job application process by submitting a written application and that he was not hired because he is a convicted felon.  The only evidence of the latter is the receptionist's statement, which (if true) falls into the category of a warning instead of proof that Defendant actually refused to hire Plaintiff for a position for which he was qualified because of his felony record.

In his Cross-Motion, Plaintiff appears to modify his claim to allege a "no-felons" hiring policy only with respect to computer-related positions of trust.  Regardless, even if the Court found that Plaintiff has shown sufficient evidence of this more limited policy, Plaintiff cannot overcome the complete lack of evidence on the second element of his claim: whether the policy caused a significant disparate impact on African-Americans.  His unsubstantiated, unsworn contention that Defendant has hired no African-Americans for the customer contact representative position is insufficient summary judgment evidence. *See Bones,* 366 F.3d at 875 (holding that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings.")  Moreover, the one publication Plaintiff cites contains no information regarding how the particular policy at issue here caused a disparate impact on African Americans.[1]  Absent any competent evidence to show that

_____

[1] Plaintiff failed to attach the referenced book, or any portion of it, to his pleadings.  The Court's internet search for the book disclosed that it is a 502-page legal treatise about the use of statistical evidence in discrimination cases.  Although the book may explain how statistical evidence can be used both to support and defend discrimination cases, and may even contain the proposition for which Plaintiff cites it ("There have been several well-known and published statistical studies/analyses conducted that have proven that the number of African-Americans in the United

Defendant's policy caused a significant disparate impact on African-Americans, the Court

finds that Defendant is entitled to summary judgment on the first claim.

## B.     Defamation Claim

Plaintiff alleges in his second claim that Defendant committed libel and slander

against him when Defendant stated in its response to Plaintiff's charge of discrimination

that Plaintiff had assaulted one of Defendant's employees.   Defendant argues that it is

entitled to summary judgment on this claim because the statements in its confidential

response to the charge of discrimination were provided only to the EEOC and are

privileged.

"The elements of a cause of action for defamation (slander and libel) are: (1) a

defamatory statement concerning another; (2) published to a third party; (3) with fault

amounting to at least negligence on the part of the publisher; and (4) either actionability of

the statement irrespective of special damages or the existence of special damages to the

---

States who have felony criminal convictions is disproportionate to their total composition of the population of the United States"), that proposition does not help to establish that Defendant's alleged "no-felons" hiring policy had a disparate impact in the case at bar.  Although the percentage of African-Americans in the United States with felony convictions may be disproportionately high, in order to prove disparate impact Plaintiff must establish that Defendant's policy actually impacted African-Americans, including Plaintiff.   At a bare minimum, Plaintiff must present evidence that Defendant decided not to hire him because of his felony conviction.  *See, e.g.*, *Gregory v. Litton Systems, Inc.*, 472 F.2d 631, 632 (9th Cir. 1972).   As indicated above, Plaintiff has not shown that Defendant decided not to hire him, because although he alleges that he completed an application, he does not allege that he submitted it after talking to the receptionist.  In addition, Plaintiff fails to present any evidence that he was not hired because of his felony record.  There is simply no non-conclusory evidence supporting the contention that he submitted a proper application and was not hired, or regarding the reason why Plaintiff was not hired.  Statistical evidence alone cannot fill this evidentiary void.   *See Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 451 (10th Cir. 1981) (holding that in a disparate impact case, "[i]t is not sufficient for an individual plaintiff to show that the employer followed a discriminatory policy without also showing that the plaintiff himself was injured."); *Chin v. Port Authority of New York and New Jersey*, 685 F.3d 135, 151 (2d Cir. 2012) (holding that an individual seeking to recover damages under a disparate impact theory must show that he or she suffered an adverse employment decision and thus was a victim of the discriminatory policy).

plaintiff caused by the publication." *Walters v. Linhof*, 559 F.Supp. 1231, 1234 (D.Colo. 1983). A defamatory statement, however, "may be absolutely or conditionally privileged depending on the context in which it was uttered." *Glaeser v. Academy School District 20*, No. 01-cv-00384-JLK-CBS, 2005 WL 2592477, at *4 (D.Colo. Oct. 13, 2005). "Communications made in the course of judicial or quasi-judicial proceedings, even though they are made maliciously and with knowledge of their falsity, are absolutely privileged if they bear a reasonable relationship to the subject of inquiry." *Id.* Thus, in Colorado, "absolute immunity shields officials who engage in judicial or quasi-judicial functions from damages liability." *Hoffler v. Colorado Department of Corrections*, 27 P.3d 371, 374 (Colo. 2001). "'The reason underlying this doctrine is that the public interest in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy where he has been wronged thereby.'" *McClarty v. Whiteford*, 30 Colo.App. 378, 379-380 (Colo.App. 1972) (quoting 50 Am.Jur.2d Libel and Slander § 231). The issue of privilege is a question of law for the court. *Club Valencia Homeowners Ass'n, Inc. v. Valencia Associates et al.,* 712 P.2d 1024, 1027 (Colo.App. 1985).

"Quasi-judicial activity is defined as '[o]f, relating to, or involving an executive or administrative official's adjudicative acts.'" *Hoffler*, 27 P.3d at 374 (quoting *Black's Law Dictionary* 1258 (7th ed. 1999)). EEOC proceedings are quasi-judicial in nature; thus, statements made in the course of such proceedings are protected by an absolute privilege. *See Cortez v. Wright*, No. CIV 06-1198 JB/ACT, 2008 WL 4104133, at *11 (D.N.M. April 29, 2008) (holding that the EEOC conducts investigations "in its role as a neutral quasi-

-12-

judicial enforcement agency."); *Adams v. Gardner Construction Group*, No. CIV-07-722-C, 2008 WL 1767085, at *1 (W.D.Okla. April 16, 2008) (dismissing the plaintiff's claim for defamation because the statements at issue, which were made in response to the plaintiff's EEOC claim, arose in a quasi-judicial proceeding and were therefore privileged); *see also Arya v. Ensil Technical Services, Inc.*, No. 12-CV-925S, 2012 WL 6690326, at *4 (W.D.N.Y. December 19, 2012) (holding that statements made in the course of a quasi-judicial proceeding, including EEOC proceedings, are protected by an absolute privilege); *Carter v. Northrop Grumman Corporation*, No. 6:10-cv-1881-28GJK, 2011 WL 7116314, at *4 (M.D.Fla. December 21, 2011) (holding that an EEOC investigation is a quasi-judicial proceeding and thus a defamatory statement made in response to an EEOC complaint is protected by an absolute privilege).

Here, there is no dispute that the alleged defamatory statements on which Plaintiff's defamation claim is based were made in Defendant's response to Plaintiff's EEOC charge of discrimination. Consequently, as the above case law demonstrates, Defendant's statements, even if defamatory, are protected by an absolute privilege. Defendant is therefore entitled to summary judgment on Plaintiff's defamation claim.

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's Motion [#21] be **GRANTED** and that Plaintiff's Cross-Motion [#34] be **DENIED**.

The Court FURTHER **RECOMMENDS** that judgment enter in favor of Defendant on both claims for relief.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have

fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 17, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-14-